Filed 3/29/22 (unmodified opn. and previous 3/17/22 mod. order attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ANTONIO R., a Person Coming Under the Juvenile Court Law. | B314389<br>(Los Angeles County<br>Super. Ct. No. 18CCJP06892) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ASHLEY R.,<br><br>        Defendant and Appellant. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br> (NO CHANGE IN THE APPELLATE JUDGMENT) |

THE COURT:

The above-entitled opinion filed on March 16, 2022 is modified as follows:

On pages 22 and 23, delete the last two sentences of the disposition starting with "If the juvenile court determines after additional inquiry and a hearing that the Department has

satisfied its inquiry and notice obligations under ICWA and California law and there is no reason to believe Antonio is an Indian child," and replace the last two sentences with the following language:

If the court finds Antonio is an Indian child, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and related California law.  If not, the court's original section 366.26 order will remain in effect.

Respondent's petition for rehearing is denied.

There is no change in the appellate judgment.

---

PERLUSS, P. J.           SEGAL, J.           FEUER, J.

Filed 3/17/22 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ANTONIO R., a Person Coming Under the Juvenile Court Law. | B314389 (Los Angeles County Super. Ct. No. 18CCJP06892) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ASHLEY R., Defendant and Appellant. | ORDER MODIFYING OPINION (NO CHANGE IN THE APPELLATE JUDGMENT) |

THE COURT:

The above-entitled opinion filed on March 16, 2022 is modified as follows:

On page 14, the second sentence in the first full paragraph starting with "Because" and ending immediately before footnote 7 is replaced with the following sentence:

Because the Department's duty to inquire of a child's extended family members is imposed by California law, "we may not reverse unless we find that the error was prejudicial."

There is no change in the appellate judgment.

PERLUSS, P. J.        SEGAL, J.        FEUER, J.

Filed 3/16/22 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ANTONIO R., a Person Coming Under the Juvenile Court Law. | B314389 (Los Angeles County Super. Ct. No. 18CCJP06892) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ASHLEY R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Juvenile Court Referee. Conditionally affirmed and remanded with directions.

Andre F.F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

Ashley R. (Mother) appeals from the order terminating her parental rights to four-year-old Antonio R. under Welfare and Institutions Code section 366.26.[1]  Mother's sole contention on appeal is that the Los Angeles County Department of Children and Family Services (the Department) and the juvenile court failed to comply with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) and related California law.

The juvenile court found ICWA did not apply as to either Mother or Father (Antonio V.) based on Mother's, Father's, and paternal great-grandmother's denials of Indian ancestry. However, the Department failed to inquire of maternal grandmother and maternal grandfather, whom the court designated as Antonio's prospective adoptive parents, or of other extended maternal relatives who were present in the courtroom during the disposition hearing, whether Antonio is or may be an Indian child.  We agree with Mother that section 224.2, subdivision (b), required the Department to inquire of the maternal extended family members,[2] and the juvenile court erred

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

[2]     On remand the Department must make an initial inquiry of the maternal relatives meeting the statutory definition of an

in finding ICWA did not apply despite the Department's insufficient inquiry. Further, in determining whether the failure to make an adequate initial inquiry was prejudicial, we ask whether the information in the hands of the extended family members was likely to be meaningful in determining whether the child is an Indian child. It was. In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child, regardless of whether the information ultimately shows the child is or is not an Indian child. We conclude the error was prejudicial because we do not know what information the maternal relatives would have provided had the Department or court inquired. We conditionally affirm and remand for the juvenile court and the Department to comply with the inquiry provisions of ICWA and California law.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 7, 2018 the Department received a referral alleging caretaker absence, incapacity, and general neglect as to then-one-year-old Antonio. On August 20 the social worker interviewed Mother. Mother stated she and her family do not

---

"extended family member," including Antonio's maternal grandparents, aunts, and uncle. (See 25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).) Mother does not contend there are other extended family members whom the Department needs to contact.

have any Indian ancestry. On the same day the social worker interviewed the maternal grandmother about the allegations, but the social worker did not inquire whether maternal grandmother knew if Antonio had Indian ancestry or whether other family members may have information on Antonio's possible Indian ancestry.

On October 25, 2018 the Department filed a petition on behalf of Antonio pursuant to section 300, subdivision (b)(1), alleging Mother had a history of substance abuse and was a current abuser of methamphetamine, had a history of leaving Antonio in the care of unrelated caregivers without making an ongoing plan for his care and supervision, and left Antonio with Wendy S., who had physically abused Mother and the maternal aunt when they were children. The petition further alleged pursuant to section 300, subdivision (j), that Antonio's older brother, Andrew R., was a former dependent of the juvenile court due to Mother's drug abuse. The petition alleged Father's whereabouts were unknown.[3]

On October 26, 2018 Mother filed a parental notification of Indian status form (ICWA-020), on which she checked the box stating, "I have no Indian ancestry as far as I know."

---

[3] California Rules of Court, rule 5.481(a)(1) requires "[t]he party seeking . . . termination of parental rights" to "complete the *Indian Child Inquiry Attachment* (form ICWA-010(A)) and attach it to the petition unless the party is filing a subsequent petition, and there is no new information." A form ICWA-010(A) was filled out and attached to the petition; the form states, "The child has no known Indian ancestry." However, the form does not list any persons who were questioned by the Department.

4

At the October 26, 2018 detention hearing, the juvenile court found ICWA did not apply as to Mother.  Father was not present.  The court asked paternal great-grandmother whether Father had any Indian ancestry "that [she is] aware of?"  Paternal great-grandmother answered, "No."  The court then stated, "The court does not believe [the Department] has the responsibility to make further inquiries, but the court can make preliminary findings, has little information to believe that this case falls under ICWA as far as Father is concerned."  The court stated in its minute order, "The Court does not have a reason to know that ICWA applies as to Mother.  The determination of ICWA status is deferred for [F]ather's appearance."  The juvenile court removed Antonio from Mother's custody and ordered the Department to provide family reunification services.

In its jurisdiction and disposition report, the Department noted Mother had a good relationship with maternal grandfather, with whom she continued to have contact by phone, and Mother provided the Department the telephone number for maternal grandfather.  The Department reported that on December 4, 2018 paternal great-grandmother denied having Indian ancestry on her side of the family and on December 5 Mother stated to her knowledge Father had no Indian ancestry.

Father first appeared by telephone at the jurisdiction hearing held on February 15, 2019.  Father denied having Indian ancestry.  The juvenile court found ICWA did not apply as to either parent.  The juvenile court sustained the allegations in the petition and found Antonio was a person described under section 300, subdivisions (b)(1) and (j).

At the June 19, 2019 disposition hearing, the maternal grandmother, maternal aunts, and a maternal uncle were

5

present in the courtroom. No one inquired whether Antonio may have Indian ancestry. Mother submitted a relative information sheet and requested assessment of the listed maternal relatives for Antonio's placement. At the continued June 20 disposition hearing, the juvenile court declared Antonio a dependent of the court. The court released Antonio to Father.

On September 24, 2019 the Department filed a subsequent petition under section 342, alleging Father engaged in domestic violence against his companion and abused methamphetamine. The juvenile court removed Antonio from Father's custody. In its October 25, 2019 jurisdiction and disposition report, the Department noted that on October 23, 2019 Father again denied having Indian ancestry. On November 9, 2019 the juvenile court sustained the section 342 petition as amended under section 300, subdivision (b)(1), and again declared Antonio a dependent of the court.

At the August 16, 2021 selection and implementation hearing (§ 366.26), the juvenile court terminated Mother's and Father's parental rights to Antonio and designated the maternal grandmother and maternal grandfather as Antonio's prospective adoptive parents. During the hearing, maternal grandmother was questioned under oath, but she was not asked whether Antonio may have Indian ancestry.

Mother timely appealed from the order terminating her parental rights.[4]

---

[4] Father has not appealed from the order terminating his parental rights.

6

## DISCUSSION

A.     *ICWA Inquiry and Notice Requirements*

ICWA provides as to dependency proceedings, "[W]here the court knows or has reason to know that an Indian child is involved, the party seeking . . . termination of parental rights to . . . an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 5*; In re T.G.* (2020) 58 Cal.App.5th 275, 288; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 784.) California law similarly requires notice to the Indian tribe and the parent, legal guardian, or Indian custodian if the court or the Department "knows or has reason to know" the proceeding concerns an Indian child. (§ 224.3, subd. (a); see *In re T.G.*, at p. 288; *In re Elizabeth M.*, at p. 784; *In re Breanna S.* (2017) 8 Cal.App.5th 636, 649, disapproved on another ground in *In re Caden C.* (2021) 11 Cal.5th 614, 637, fn. 6; Cal. Rules of Court, rule 5.481(c)(1) [notice is required "[i]f it is known or there is reason to know an Indian child is involved in a proceeding listed in rule 5.480," which includes dependency cases filed under section 300].) The notice requirement is at the heart of ICWA because it "enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*In re Isaiah W.,* at p. 5; accord, *In re T.G.*, at p. 288; see 25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (d).)

The juvenile court and the Department "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed,

7

is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W., supra*, 1 Cal.5th at p. 9; *In re H.V.* (Feb. 18, 2022, B312153) ___ Cal.App.5th ___ [2022 Cal. App. LEXIS 132, at *4] ["The trial court and [Department] have an affirmative and continuing duty in every dependency proceeding to determine whether ICWA applies."].)  "The continuing duty to inquire whether a child is or may be an Indian child 'can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552; accord, *In re H.V.*, at p. ___ [2022 Cal. App. LEXIS 132, at *4-5]; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 402.)

"The duty to inquire begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child.  (§ 224.2, subds. (a)-(c))." (*In re T.G., supra*, 58 Cal.App.5th at p. 290; see *In re H.V., supra*, ___ Cal.App.5th at p. ___ [2022 Cal. App. LEXIS 132, at *4] ["[F]rom the [Department]'s initial contact with a minor and his family, [section 224.2] imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child."].)

Section 224.2, subdivision (b), effective January 1, 2019,[5] imposes on the Department a duty to inquire whether a child in

---

[5]     Because Mother is appealing from the August 16, 2021 termination of her parental rights, which occurred after the 2019 effective date of the amendment to section 224.2, the amended provisions apply here.  (*In re A.M.* (2020) 47 Cal.App.5th 303, 321 ["Since Mother is appealing from the findings made at the

8

the Department's temporary custody is an Indian child, which "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (*Id.*; see Cal. Rules of Court, rule 5.481(a)(1) [the Department "must ask . . . extended family members . . . whether the child is or may be an Indian child"]; *In re D.F.* (2020) 55 Cal.App.5th 558, 566; *In re Y.W., supra,* 70 Cal.App.5th at pp. 551-552.) Under ICWA, the term "extended family member" is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent." (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c) ["As used in connection with an Indian child custody proceeding, the terms 'extended family member' and 'parent' shall be defined as provided in Section 1903 of the federal Indian Child Welfare Act."].)

"State law also expressly requires the juvenile court to ask participants who appear before the court about the child's potential Indian status. (§ 224.2, subd. (c).)" (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*); accord, *In re Josiah T., supra,* 71 Cal.App.5th at p. 402.) Similarly, under federal regulations, "[s]tate courts must ask each participant in an . . . involuntary child-custody proceeding

---

September 6, 2019 section 366.26 hearing . . . , the current ICWA statutes apply."].)

9

whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a).)

The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families. (*In re Elizabeth M., supra,* 19 Cal.App.5th at p. 785; see *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["The court and the agency must act upon information received from any source, not just the parent [citations], and the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal . . . ."].)

B.     *The Juvenile Court Failed To Ensure the Department Complied with ICWA and Related California Law*

On appeal, Mother contends the Department should have inquired of maternal grandmother, maternal grandfather, the maternal aunts, and a maternal uncle about Antonio's possible Indian ancestry.[6] We agree the Department failed to satisfy its initial duty of inquiry under section 224.2, subdivision (b). Simply put, section 224.2 required the Department to inquire of

---

[6]     Mother also contends the Department should have investigated and inquired of additional paternal extended family members (in addition to paternal great-grandmother), but she fails to identify any paternal relatives for whom she has contact information or who may have information on Father's possible Indian ancestry. Thus, we focus on Mother's argument of error as to Antonio's maternal extended family members.

Antonio's extended family members regarding his possible Indian ancestry, and it was error for the Department to fail to do so.

Information relevant to Antonio's possible Indian ancestry was readily obtainable from several of his extended family members. The Department interviewed maternal grandmother at the outset of the case on August 20, 2018. The court later placed Antonio with maternal grandmother and grandfather. Additionally, maternal grandmother testified under oath at the August 16, 2021 selection and implementation hearing, and at that hearing the juvenile court designated maternal grandmother and grandfather as the prospective adoptive parents of Antonio. Further, at the June 19, 2019 disposition hearing, the maternal aunts and a maternal uncle were present.

Despite these multiple opportunities, the Department failed to inquire of any of these maternal extended family members as to Antonio's possible Indian ancestry, and the court erred in failing to ensure that the Department satisfied its duty of inquiry and in finding ICWA did not apply absent an adequate inquiry. Although section 224.2, subdivision (b), places on the Department the duty to inquire, including of extended family members, section 224.2, subdivision (a), makes clear that the "affirmative and continuing duty to inquire" whether a child is or may be an Indian child rests with both the Department *and the court*. (See § 224.2, subdivision (i)(2) ["If the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."].) Thus, a juvenile court errs in making a finding

11

ICWA does not apply to the proceedings without first ensuring that the Department has made an adequate inquiry under ICWA and California law, and if necessary, the court must continue the proceedings and order the Department to fulfill its responsibilities.

The Department contends substantial evidence supports the juvenile court's finding ICWA did not apply because Mother, Father, and paternal great-grandmother denied Indian ancestry. This position ignores the express obligation that section 224.2, subdivision (b), imposes on the Department to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry. By requiring the Department to inquire of a child's extended family members as to the child's possible Indian ancestry, the Legislature determined that inquiry of the parents alone is not sufficient. (See *In re Y.W., supra*, 70 Cal.App.5th at p. 556 ["the point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child" is "to obtain information the parent may not have"]; Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3176 (2017-2018 Reg. Sess.) as amended Apr. 11, 2018, p. 3 [explaining the legislation "[e]xpands" the "current requirement that a court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child is an Indian child, to begin at the first contact with the child"].)

As the California ICWA Compliance Task Force Report to the California Attorney General's Bureau of Children's Justice observed in recommending California law be amended to require inquiry of family members beyond the parents, "The parents or Indian custodian may be fearful to self-identify, and social

workers are ill-equipped to overcome that by explaining the rights a parent or Indian custodian has under the law.  Parents may even wish to avoid the tribe's participation or assumption of jurisdiction."  (Cal. ICWA Compliance Task Force, Rep. to Cal. Atty. Gen.'s Bur. of Children's Justice (2017) p. 28.)

Further, parents may lack knowledge of a child's Indian ancestry even where the child's extended family members possess strong evidence of the child's possible Indian ancestry.  (See *In re S.R.* (2021) 64 Cal.App.5th 303, 314 ["[T]he children's parents apparently had no idea of their family's connection to the Yaqui tribe of Arizona, even though the children's great-grandmother was a member and still lived with the grandparents in Colorado."]; *In re T.G., supra*, 58 Cal.App.5th at p. 289 ["Oral transmission of relevant information from generation to generation and the vagaries of translating from Indian languages to English combine to create the very real possibility that a parent's or other relative's identification of the family's tribal affiliation is not accurate."].)

Although paternal great-grandmother's denial of Indian ancestry provided some confirmation of Father's denials, the Department never interviewed any extended family members on the maternal side regarding Antonio's possible Indian ancestry.  Thus, the record does not support the juvenile court's finding that ICWA does not apply given the Department's failure to satisfy its initial duty of inquiry as to maternal extended family members, and the court's failure to ensure that the Department met its duty.  (See *In re N.G.* (2018) 27 Cal.App.5th 474, 484 ["In the absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that

13

substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply."].)

The Department argues in the alternative that any error in failing to inquire of Antonio's extended family members was harmless because "any such inquiry 'was [not] likely to bear meaningfully upon whether the child is an Indian child' because 'the evidence already uncovered in the initial inquiry was sufficient for a reliable determination.'" Because it the Department's duty to inquire of a child's extended family members is imposed by California law, "we may not reverse unless we find that the error was prejudicial."[7] (*Benjamin M., supra*, 70 Cal.App.5th at p. 742 ["Because the failure here concerned the *agency*'s duty of initial inquiry, only state law is involved."]; see Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; *In re Y.W., supra*, 70 Cal.App.5th at p. 558 ["'Any failure to comply with a higher state standard . . . "must be held harmless unless the appellant can show a reasonable probability that he or she

_____

[7]    The juvenile court arguably also erred under federal law by failing to inquire of maternal grandmother and grandfather, whom the court designated as the prospective adoptive parents of Antonio, and thus could have been considered "participants" in the dependency proceeding.  (See 25 C.F.R. § 23.107(a).) However, neither federal nor California law defines a "participant."

14

would have enjoyed a more favorable result in the absence of the error.""].)  The error here was prejudicial.

　　We recognize the Courts of Appeal are divided as to whether a parent must make an affirmative showing of prejudice to support reversal where the Department failed fully to perform its initial duty of inquiry.  One line of cases requires that in order to demonstrate prejudice, "a parent asserting failure to inquire must show—at a minimum—that, if asked, he or she would, in good faith, have claimed some kind of Indian ancestry."  (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069; accord, *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431.)  We rejected this approach in *In re Y.W., supra*, 70 Cal.App.5th at page 556, explaining, "It is unreasonable to require a parent to make an affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim."  (*Ibid.*; accord, *In re H.V., supra*, ___ Cal.App.5th at p. ___ & fn. 4 [2022 Cal. App. LEXIS 132, at *6] [failure to discharge initial duty of inquiry was prejudicial error because "[m]other does not have an affirmative duty to make a factual assertion on appeal that she cannot support with citations to the record" and the absence of information in the record about the child's possible Indian ancestry resulted from the Department's failure to discharge its duty of inquiry]; *Benjamin M., supra*, 70 Cal.App.5th at p. 743 ["Requiring a parent to prove that the missing information would have demonstrated 'reason to believe' would effectively impose a duty on that parent to search for evidence that the Legislature has imposed on only the agency."].)

　　The court in *Benjamin M., supra*, 70 Cal.App.5th at page 744 articulated a different approach, concluding the reviewing

15

court "must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." Division One of this district in *In re S.S.* (Feb. 24, 2022, B314043) ___Cal.App.5th___ [2022 Cal. App. LEXIS 156, at *10-11] and *In re Darian R.* (Feb. 24, 2022, B314783) ___Cal.App.5th ___ [2022 Cal. App. LEXIS 155, at *11-12] purported to apply this standard, but concluded the failure of initial inquiry was harmless based on speculation that readily obtainable information from extended family members was not likely to bear meaningfully on whether the child was an Indian child. In *S.S.*, the court concluded the Department's error in not interviewing the maternal grandmother was not prejudicial because the mother denied Indian ancestry and the maternal grandmother requested the child be placed with her, giving the grandmother "a strong incentive to bring to the court's attention any facts that suggest that S.S. is an Indian child" so that the child could be placed with her. (*In re S.S.*, at p. ___ [2022 Cal. App. LEXIS 156, at *10-11].) The *S.S.* court reasoned that the failure of the maternal grandmother and counsel to raise facts related to S.S.'s possible Indian ancestry "implies that the maternal grandmother is unaware of such facts." (*Id*. at p. ___ [2022 Cal. App. LEXIS 156, at *11].)

Similarly, in *In re Darian R., supra*, ___Cal.App.5th ___ [2022 Cal. App. LEXIS 155, at *11-12], the same court concluded the mother failed to show prejudice from the Department's failure to inquire of extended maternal family members where mother lived with those family members during the dependency proceedings and the juvenile court in 2015 dependency

16

proceedings had determined ICWA did not apply to two of the three biological siblings.[8]  Thus, the *Darian R.* court concluded, additional interviews of mother's father and sister would not have "meaningfully elucidated the children's Indian ancestry." (*Id.*, at p. ___ [2022 Cal. App. LEXIS 155, at *12].)[9]

We disagree with the reasoning of our colleagues in *In re S.S.* and *In re Darian R.* (and their application of *Benjamin M.*) and find no persuasive reason to depart from our decision in *In re Y.W., supra,* 70 Cal.App.5th 542.  Where the Department fails to

---

[8]  We note the juvenile court's 2015 determination that ICWA did not apply was made prior to the 2018 amendments to section 224.2 requiring inquiry of extended family members.

[9]  Most recently, Division One of this district concluded the Department's failure to inquire of readily available extended family members was prejudicial error where "mother, as a foster care product, may not know her cultural heritage, but her biological relatives may have that information." (*In re A.C.* (Mar. 4, 2022, No. B312391) ___Cal.App.5th___ [2022 Cal. App. LEXIS 187, at *12-13].)  Further, a detention report indicated the child may be an Indian child but the Department did not "follow-up on that representation." (*Id.*, at p. ___ [2022 Cal. App. LEXIS 187, at *13].)  It was on this record that the court concluded there was "readily obtainable information that was likely to bear meaningfully on whether A.C. was an Indian child." (*Id.*, at p. ___ [2022 Cal. App. LEXIS 187, at *12].)  To the extent our colleagues in Division One believe this the type of evidence is necessary to demonstrate prejudicial error—showing a likelihood extended family members will have information indicating the child *is* an Indian child—in our view they set the bar too high for showing inquiry error is prejudicial.

17

discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most circumstances, as here, prejudicial and reversible. Speculation as to whether extended family members might have information likely to bear meaningfully on whether the child is an Indian child has no place in the analysis of prejudicial error where there is an inadequate initial inquiry. Rather, in determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian child. In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child—regardless of whether the information ultimately shows the child is or is not an Indian child. (See *Benjamin M., supra*, 70 Cal.App.5th at p. 745 ["While we cannot know how Father's brother would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue about his brother."].)[10] We therefore reject the Department's contention at oral argument that the error here

---

[10] At oral argument Mother's counsel posited some circumstances in which the failure to inquire of extended family members might be harmless error, including where the parents affirmatively confirm their ancestry is exclusively from a foreign region without any relationship to a federally recognized Indian tribe, for example, from Eastern Europe or Africa. We do not reach this or other hypothetical situations where the error could be harmless.

was harmless because there were "slim" odds the information in the possession of the extended maternal relatives would show Antonio is qualified for membership in an Indian tribe. The Department's position would require us to engage in precisely the type of speculation we consider inappropriate.

To conclude otherwise would frustrate the purpose of ICWA and California law. In enacting ICWA, Congress expressly found "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children"; "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions"; and "the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." (25 U.S.C. § 1901(3)-(5); see H.R.Rep. No. 95-1386, 2d Sess., p. 9 (1978) ["The wholesale separation of Indian children from their families is perhaps the most tragic and destructive aspect of American Indian life today."].) A dependency proceeding implicates "the tribe's right to a determination of a child's Indian ancestry, but the tribe is not present, and the agency is charged with obtaining information to make that right meaningful." (*Benjamin M., supra,* 70 Cal.App.5th at p. 745.)

We also reject the suggestion by the dissent in *In re H.V., supra*, ___Cal.App.5th at page ___ [2022 Cal. App. LEXIS 132, at *9-10] (dis. opn. of Baker, J.) that the Welfare and Institutions

Code imposes a "Byzantine scheme of inquiry" and "further inquiry" that burdens the Department such that "the costs swamp the benefits when courts read the statutory scheme to require child services agencies to undertake exhaustive efforts to run down even the most remote, unlikely possibility of Indian heritage such that the agencies functionally end up trying to prove a negative." All the Department needed to do was to inquire of the maternal relatives—identified by Mother and later present in the courtroom—whether Antonio is or may be an Indian child. (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(1).) The so-called burden on the Department (to satisfy its responsibilities) cannot justify the potential to break up Indian families given the country's history of doing just that.

Nor can the sake of efficiency justify applying a relaxed harmless error standard. Indeed, it is the failure of the Department to satisfy its obligations during the dependency proceeding that creates uncertainty and potential delay because a juvenile court judgment is subject to collateral attack based on later-discovered information that a child is an Indian child. (*Benjamin M., supra*, 70 Cal.App.5th at p. 745; see 25 U.S.C. § 1914 [Indian child's tribe may petition to invalidate action conducted in violation of certain ICWA provisions].) "That risk would be greater, and even more unacceptable, if the agency forgoes basic inquiry into potentially meaningful, easily acquirable information." (*Benjamin M.*, at p. 745.)

## DISPOSITION

The August 16, 2021 order terminating Mother's and Father's parental rights is conditionally affirmed.[11]  We remand to the juvenile court for the Department and the court to comply with the inquiry and notice provisions of ICWA and California law consistent with this opinion, including inquiring of the maternal extended family members.  If the juvenile court determines after additional inquiry and a hearing that the Department has satisfied its inquiry and notice obligations under ICWA and California law and there is no reason to believe Antonio is an Indian child, the order terminating parental rights shall remain the order of the court.  If the Department or the court after complying with the inquiry requirements of ICWA and

---

[11]  We are not persuaded by Mother's contention that conditional affirmance of the order terminating parental rights will jeopardize her ability to appeal from a further order of the juvenile court regarding ICWA compliance.  (See § 395, subdivision (a)(1) ["A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment."].)

California law has reason to believe that Antonio is an Indian child, the court shall vacate the order terminating Mother's and Father's parental rights and proceed consistent with this opinion and the inquiry and notice provisions of ICWA and California law.

FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

22